

**SO ORDERED.**

**SIGNED this 01 day of November, 2012.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THE HIGHLANDS GROUP OF BRUNSWICK, LLC | 11-07628-8-SWH |
| DEBTOR | |

### ORDER DENYING MOTION TO DISMISS OR CONVERT, DETERMINING CLASSIFICATION OF CLAIMS, AND RESOLVING VALUATION MOTIONS

Primarily at issue are two motions filed by creditor Park Sterling Bank ("Park Sterling"): the motion to dismiss or convert case, and the motion to determine classification of claims, both of which were brought before the court for hearing on August 23, 2012, in Raleigh, North Carolina. The court already has denied the motion to dismiss or convert by order entered on September 6, 2012, and this order sets forth the basis on which the court determined that there was no cause, pursuant to § 1112(b)(1), to dismiss or convert this case. Additionally, as set forth below, the court has determined that the separate classification of the deficiency claim of Park Sterling is appropriate.

Also before the court are Park Sterling's motion to stay entry of an order regarding valuation of collateral and its withdrawal of its motion for valuation, as well as the debtor's responsive filings, namely the debtor's motion for valuation and objection to Park Sterling's withdrawal of its motion

for valuation. In light of the court's ruling on dismissal, the court will allow the debtor's motion for valuation (the relevant testimony already having been taken), deny Park Sterling's motion to stay entry of any order regarding valuation, and deny as moot the debtor's objection to Park Sterling's withdrawal of its motion.

**BACKGROUND**

The debtor, The Highlands Group of Brunswick, LLC ("Highlands"), owns a parcel of real property known as the Highlands Forest Townhomes in Brunswick County, North Carolina.[1] The parcel consists of nine completed residential townhomes, 58 townhome pads, common areas and a pool with pool house. On or about July 31, 2007, the debtor executed a promissory note (the "Note") in favor of Park Sterling in the amount of $4,344,000, which is secured by a lien on all of the debtor's property. As further security for the Note, a number of individuals executed Commercial Guaranty Agreements ("Guaranties"), pursuant to which each guarantor unconditionally guaranteed repayment of the debtor's obligations to Park Sterling. The debtor subsequently defaulted under the Note, and Park Sterling instituted foreclosure proceedings in Brunswick County. On August 3, 2011, Park Sterling filed a civil action on the Note and Guaranties against the debtor and the individual guarantors in Mecklenburg County Superior Court.

The debtor filed a petition under chapter 11 of the Bankruptcy Code on October 5, 2011. The debtor filed a plan on December 30, 2011, in which it proposed to surrender to Park Sterling all of its property, with the exception of one of the completed townhomes, in full satisfaction of Park

---

[1] The facts set forth herein are taken largely from Park Sterling's motion to dismiss or convert. The debtor did not address the factual background of the case in its response to the motion, and the court borrows from Park Sterling's recitation solely for establishing the general factual background for this order.

Sterling's claim. The debtor sought to retain the townhome (Lot #2) to be liquidated, with the proceeds distributed in payment of the allowed non-insider general unsecured claims, which totaled $80,370.08 on the debtor's schedules.

On February 1, 2012, Park Sterling filed a Motion for Valuation of Collateral in the bankruptcy case. It also filed a motion for summary judgment against the guarantors (but not the debtor) in the Mecklenburg County civil action. The motion for summary judgment was heard on May 1, 2012, and on May 16, the state court entered a judgment in favor of Park Sterling and against each of the guarantors (Harry W. Stovall, III ("Stovall"); Alexander O. McCarley; Harry W. Stovall, IV; and Lori C. Stovall) in the amount of $2,511,698.61 (the debt plus 15% attorneys' fees). The guarantors filed a notice of appeal.

The valuation hearing in this court was conducted close on the heels of those events, and took place on May 21-22, 2012, concluding on July 2, 2012.

After the first two days of the valuation hearing, the debtor filed, on June 4, 2012, an amended plan in which the debtor proposed full surrender of its property to Park Sterling in satisfaction of the secured claim. The debtor's amended plan provided that its members (Stovall, McCarley & Company, and Harry W. Stovall, IV) would pay the unsecured claims. Stovall, a guarantor subject to the Mecklenburg County judgment, filed an individual chapter 11 case in this court on June 22, 2012.

On July 20, 2012, Park Sterling withdrew its motion for valuation of collateral and asked the court to stay entry of any order regarding valuation, citing a change in its strategy based upon the debtor's modification of the plan and Stovall's bankruptcy filing. On July 24, 2012, Park Sterling

filed objections to confirmation of the plan and to the disclosure statement, as well as a motion to dismiss or convert. The debtor filed responses and the court, in an order dated September 6, 2012, denied the motion to dismiss or convert for the reasons that follow.

## DISCUSSION

### I.    Motion to Dismiss or Convert

Park Sterling's motion to dismiss or convert is in large part intertwined with its withdrawal of the motion for valuation. In Park Sterling's view, the facts of this case in its current posture illustrate that the "true motive of the liquidating debtor" was

> not to utilize Chapter 11 to restructure its business, but to achieve a favorable valuation of the mortgaged property for the purpose of attempting to limit (or eliminate) guarantor exposure. Such cases are filed for an improper purpose and in bad faith and should be dismissed or converted to Chapter 7.

Park Sterling's Mot. to Dismiss at p. 7 ¶ 39. Park Sterling's assessment of the debtor's motives are shaped in large part by the fact of Stovall's bankruptcy filing, which Park Sterling believes will include an "attempt to modify the Judgment to obtain credit for the value of the Property, as assigned by this Court." Park Sterling's Withdrawal of Mot. for Valuation at p. 2 ¶ 5. It is Park Sterling's position that the two bankruptcy cases are related in that the purpose of Stovall's bankruptcy case is "to attempt to capitalize on a favorable Court-determined valuation of the Property for purposes of cram-down in the Debtor's case by seeking a credit against the Judgment in the Court-determined amount." Park Sterling's Mot. to Dismiss at p. 4 ¶ 27. The debtor, in response, argued that its case was neither filed in subjective bad faith nor objectively futile, both of which must be established for a case to fail the two-pronged test set out in Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989). In its order denying the motion to dismiss, the court agreed with the

debtor and ruled that there was no cause, pursuant to § 1112(b)(1), to either dismiss or convert the case.

Both parties agreed that the applicable test by which to determine whether the case was filed in bad faith is derived from Carolin, in which the Court of Appeals for the Fourth Circuit emphasized that whether to dismiss a case for bad faith is assessed pursuant to an intentionally "stringent" test, the overall aim of which is to "determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing." Id. at 701. That two-part test derives from this explanation by the Carolin court:

> For three distinct reasons, a generalized "good faith filing" requirement appears implicit in § 1112(b). First, the provision lists *objective* circumstances which presumably justify dismissal because of the futility of reorganization proceedings. Second, and more significantly, the listed circumstances are generally consistent with and may in fact affirmatively evidence a *subjective* lack of good faith on the part of a Chapter 11 petitioner.

Id. at 699 (also noting, as the third indicator of a good faith requirement, that the statute permits dismissal "for cause," which the court saw as "further suggesting the propriety of dismissal in the face of a petitioner's lack of good faith"). The Carolin court acknowledged that "although separate inquiries into each are required, proof inevitably will overlap." Id. at 701. In this case, Park Sterling rests its argument primarily on what it characterizes as the debtor's subjective lack of good faith, and the court turns to that inquiry first.

### A. Subjective Bad Faith

The subjective bad faith inquiry is designed to "insure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" Id. (quoting In re Victory Constr. Co., 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)). However, a debtor with no ongoing business may

5

file a chapter 11 petition, and it is clear that a bankruptcy court "may consider any viable and effective method of reorganization, including full or partial liquidation." In re Schofield-Johnson, LLC, 2010 WL 174152 at *3 (Bankr. M.D.N.C. 2010) ("Section 1129(a) expressly permits a Chapter 11 plan to be a plan of liquidation."). In this liquidation context, it may be more helpful to consider how the Carolin court rephrased the goal of the current inquiry: "Put obversely," that court said, "the aim of the subjective bad faith inquiry is "to determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" Carolin, 886 F.2d at 701 (quoting In re Thirtieth Place, Inc., 30 B.R. 503, 505 (9th Cir. Bankr. App. 1983)).

In Park Sterling's view, this case represents an effort to benefit the guarantors and only the guarantors, to the exclusion of all others. It cited parallels between the debtor's case and other cases that it found persuasive, the gist of which is that

> [e]ach of those cases have similar threads: (a) a liquidating plan which proposes to surrender the debtor's sole asset to the mortgagor; (b) the existence of a guarantor who is liable to the mortgagor and is capable of paying; (c) pending litigation against that guarantor to enforce the guaranty obligation; and (d) minimal unsecured creditors who will either be paid by the guarantor or are in no better position in bankruptcy than outside of it.

Park Sterling's Mot. to Dismiss at p. 7 ¶ 38 (discussing In re Humble Place Joint Venture, 936 F.2d 814, 818 (5th Cir. 1991); In re North Vermont Assocs., L.P., 165 B.R. 340, 341-43 (Bankr. D.D. Col. 1994)).

The court disagrees. The filing of a chapter 11 petition with the ultimate goal of surrendering real property in a SARE context is not, by virtue of that goal, an illegitimate use of the bankruptcy

6

process; further, the fact that guarantors may benefit from this process does not, of itself, establish bad faith. Section 1129(a) requires that a plan and its proponent comply with the applicable provisions of chapter 11, and that a plan be in good faith and not proposed by any means forbidden by law. In this case, it is plain that equity holders who, here, are also guarantors, have legitimate interests protected under the Bankruptcy Code, so if the equity holders believe their interests are better served with a valuation from the bankruptcy court at fair market value rather than a liquidation value established through foreclosure, then the goal of serving that interest is appropriate. This is especially so when, as here, unsecured creditors other than Park Sterling must rely upon the guarantors for payment. If valuation by this court results in guarantors having less liability to Park Sterling, then they will be better able to pay other creditors, which is wholly consistent with the ultimate aims of the Bankruptcy Code

In this case, as in In re Swartville, the court is "satisfied that the debtor's purpose in filing the petition was not to abuse the bankruptcy system or impose hardship upon creditors, but rather to utilize the valuation process available under 11 U.S.C. § 506(b) and surrender property pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii)." Swartville, 2012 WL 112990 at *3. The provisions of § 1129(b)(2) are available for the debtor's use, that is precisely what the debtor did, and that appropriate usage does not support a finding of bad faith.

As the Carolin court observed, the "dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing particular facts into previously identified patterns [are] obvious, and must be guarded against." Carolin, 886 F.2d at 701. In this case, it appears to the court that there may be some indicia-counting going on in the Park Sterling camp, with each development in the case – particularly those pertaining to guarantors – causing Park

Sterling to re-examine what *it* believes the debtor had in mind when the debtor originally filed its chapter 11 petition.[2] While Park Sterling, like any creditor, is wise to stay on its toes and constantly assess the progress of the case, the facts of this case simply do not support a finding that it was filed in bad faith, and the cases on which Park Sterling relies are not persuasive.

### B. Objective Futility

Because it is necessary for Park Sterling as the movant to demonstrate both objective futility and bad faith, which it cannot do, the court could end its consideration of the motion to dismiss here. See Carolin, 886 F.2d at 700. However, in the interest of thoroughness, the court also will undertake the objective futility inquiry.

Park Sterling endeavored to meet its burden of demonstrating objective futility by insisting that the debtor's plan cannot provide, to any of its non-insider creditors, value that would otherwise be lost outside of bankruptcy. Park Sterling Bench Brief in Support of Mot. to Dismiss at p. 3. For that reason, Park Sterling argued, the case is objectively futile in that it:

> Does not create any additional value for the Debtor. The Debtor proposes to fully surrender its property to Park Sterling, which would leave the Debtor with nothing

---

[2] There is no specific temporal aspect to the court's assessment of a motion to dismiss under § 1112(b), but courts generally take as evident that a debtor's intent in filing a petition is best assessed with reference to what that debtor knew and what had already in fact happened, at or prior to the time of filing the petition. See, e.g., In re Hurt, 369 B.R. 274, 279 (Bankr. W.D. Va. 2007) ("Carolin Corp. holds that a creditor seeking to dismiss a Chapter 11 case for bad faith must prove that objective futility and subjective bad faith were present at the filing.").

Park Sterling itself bases its motion on its assumed motivation of the debtor at the time it amended its plan, not at the time of the filing of the petition: to "achieve a favorable valuation . . . for the purpose of attempting to limit (or eliminate) guarantor exposure": specifically, "[a]fter one (1) day of appraiser testimony, after realizing it could not confirm a partial dirt-for-debt plan over Park Sterling's objection, the Debtor decided to amend its Plan and Disclosure Statement to provide for a full dirt-for-debt treatment of Park Sterling's claim and collateral." Park Sterling's Mot. to Determine Classification of Claims at p. 1 ¶ 3.

8

>   to reorganize and no remaining value. This is precisely the position the Debtor would be in were Park Sterling allowed to proceed with its state law rights against the Debtor's property, or were this case converted to Chapter 7.
>
>   Does not create any additional value for any non-insider creditor. Were this case dismissed or converted, the tax claim of Brunswick County remains protected and will be paid first out of any proceeds from the sale of the Property. The Debtor's Amended Plan proposes that the unsecured claim of Regions Bank will be paid by the Debtor's members, not from the Debtor's assets. Payments from an outside source are not governed or required by the bankruptcy code. Rather, the treatment of Regions Bank's claim is a gratuitous offer made by the Debtor's members that could just as well be made in Chapter 7 or following dismissal of this case.

Id. at p. 4-5.

In response, the debtor pointed out that appraisals undertaken by both the debtor and Park Sterling indicate the existence of an equity cushion in the property, and argued that it "clearly has a going concern to preserve." Debtor's Response to Mot. to Dismiss at p. 2. In the court's view, the more compelling factor weighing against objective futility in this case is that the debtor has filed a plan that could possibly be confirmed as filed, or with reasonable modification. See, e.g., Swartville, 2012 WL 1129990 *2 (noting that the fact that the debtor's plan could be confirmed was a factor "weighing against objective futility"); In re Skeen, Goldman LLP, 2007 WL 4556683 *5 (Bankr. D. Md. 2007) (including the "low probability of a confirmed plan" as a factor supporting a finding of objective futility under Carolin).

As is discussed in more detail below, the classifications within the debtor's first amended plan are proper in that there will be an accepting impaired class (Regions Bank having already filed an accepting ballot). The guarantors will need to show their ability to pay, but the confirmation hearing – which is the proper arena in which to resolve that question – has not yet taken place, and Park Sterling has not shown that the plan cannot be confirmed within a reasonable amount of time.

9

There is no basis upon which this court could determine that the debtor's case is "objectively futile," and the court denies Park Sterling's motion to dismiss on that basis as well.

Park Sterling's motion included a request for conversion as an alternative to dismissal, but Park Sterling did not go beyond the bounds of the arguments it offered in support of dismissal. Those arguments did not establish cause to convert, and there is no indication that the interests of creditors and the estate would be best served by conversion of the chapter 11 case to a case under chapter 7.

## II.     Motion to Determine Classification of Claims

Park Sterling moves, in the alternative, for the court to determine that the debtor has improperly classified a separate class of unsecured claims which would, if properly classified, result in the non-existence of an accepting class. Specifically, Park Sterling challenges the separate classification of Regions Bank's unsecured claim in the amount of $80,370.08. For the reasons that follow, the court determines that the classes designated by the debtor are proper and that reclassification is not warranted, and the debtor may proceed to confirmation.

Rule 3013 provides that "[f]or the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders pursuant to §§ 1122, 1222(b)(1), and 1322(b)(1) of the Code." Fed. R. Bankr. P. 3013. The rule is a "gatekeeping provision," Park Sterling asserts, which this court should use to preclude the debtor's alleged effort to "gerrymander" the general unsecured claim of Regions Bank and the unsecured deficiency claim of Park Sterling into two separate classes. "There is no explanation or legitimate justification even offered for this gerrymandering in either the Plan or Disclosure Statement," and the "separate classification of the similarly situated, non-insider

10

unsecured claim[s] . . . is improper and violates 11 U.S.C.§ 1122 and well-established Fourth Circuit precedent." Park Sterling's Mot. to Determine Classification of Claims at p. 2 ¶¶ 9, 7. Park Sterling concludes that the debtor is required to "demonstrate that claims have been classified separately 'for reasons independent of the Debtor's motivation to secure the vote of an impaired, assenting, class of claims,'" but that the debtor cannot do so. Id. at p. 2 ¶ 8 (quoting Traveler's Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII), 961 F.2d 496, 502 (4th Cir. 1992)).

The court disagrees. Section 1122 prohibits a classification scheme designed to manipulate voting, but does extend to debtors the discretion to separately classify claims if the classification is supported by some "legitimate purpose" or features "legitimate differences among otherwise substantially similar claims." In re Sea Trail Corp., 2012 WL 5247175 *6 (Bankr. E.D.N.C. 2012) (quoting In re Somerset Props., SPE, LLC, 2012 WL 3644737 *4 (Bankr. E.D.N.C. 2012) (internal quotations omitted)). The debtor is required to establish that there are meaningful distinctions between the classes, and legitimate bases upon which to classify the claims separately, and in this case the debtor has done so. As the debtor points out, the treatments of the claims are different:

> The proposed treatment of Park Sterling's deficiency claim, if any, is amortized over a shorter period of time [60 months] and paid at the contract rate of interest [5%], as noted on the claim of Park Sterling. In addition, the Plan provides that one or more members of the Debtor would provide Park Sterling with collateral to secure the unpaid balance of the claim if the claim is not paid in full within a year, in effect allowing Park Sterling's claim to remain secured. The unsecured claims, however, which have always been unsecured, are paid over a longer period of time [7 years] and at a lower interest rate [of 3%].

Debtor's Response to Park Sterling's Mot. to Determine Classification of Claims at p. 2 ¶ 7. Moreover, Park Sterling is a secured creditor with a right to elect under 11 U.S.C. § 1111(b)(2) to be treated as fully secured by the debtor, which is a right that Regions Bank does not have. Id. at p. 2-3 ¶ 9 (citing Matter of Woodbrook Assocs., 19 F.3d 312 (7th Cir. 1994)). While Park Sterling

may elect not to enforce that right, its decision, which would be based entirely on Park Sterling's subjective assessment of its unique business interests, does not invalidate the underlying basis for the designation. Because the debtor's classification of the unsecured claims is reasonable and because the debtor has articulated legitimate bases for the classification, Park Sterling's motion objecting to the classifications will be denied.

## CONCLUSION

Park Sterling's motion to dismiss or convert was denied on September 6, 2012, for the reasons set forth above. Because the classification scheme proposed by the debtor is legitimate, reasonable and nondiscriminatory, Park Sterling's motion requesting that the court determine the debtor's claims classification to be improper is **DENIED**.

In addition, the debtor's motion for valuation is **ALLOWED**, Park Sterling's motion to stay entry of any order regarding valuation is **DENIED**, and the debtor's objection to Park Sterling's withdrawal of its motion is **DENIED AS MOOT**. The court will, by separate order, determine the value of Park Sterling's collateral and set the confirmation hearing.

**SO ORDERED**.

**END OF DOCUMENT**